IN THE MATTER OF FREDERICK F. RICHARDSON, RE-
LATING TO HIS REFUSAL, IN PART TO TESTIFY AND
TO PRODUCE RECORDS ON THE APPEAL OF RUSSELL
J. PFITZINGER BEFORE THE CIVIL SERVICE COM-
MISSION.

Argued November 24, 1959—Decided January 25, 1960.

Mr. *Theodore I. Botter* argued the cause for the appellants (*Mr. David D. Furman,* Attorney General, attorney for the appellants, The Civil Service Commission, The State Highway Department and Dwight R. G. Palmer, State Highway Commissioner).

Mr. *Frederick F. Richardson* argued the cause *pro se* for the respondent.

The opinion of the court was delivered by

JACOBS, J.   The Mercer County Court determined that in view of the attorney-client privilege the respondent Frederick F. Richardson could not be compelled to divulge who paid the fees for the legal services rendered by him in his professional representation of Russell J. Pfitzinger; accordingly, it discharged the order to show cause which the Attorney General had obtained and the appellants duly filed their notice of appeal to the Appellate Division. We certified the appeal while it was pending there.

Mr. Pfitzinger, a material inspector in the State Highway Department, was charged in 1949 or 1950 with violation of the Hatch Political Activity Act.   See 5 *U. S. C. A.* § 118*k*(*a*).   He consulted Mr. Richardson who agreed to act as his attorney;   Mr. Richardson was then general counsel for Dallenbach Sand Co., a corporation which was engaged in the mining of sand and gravel and its sale to various people including contractors doing construction work for the State of New Jersey and whose products were the subject of inspection from time to time by Mr. Pfitzinger. The United States Civil Service Commission found Mr. Pfitzinger guilty of violation of the Hatch Act and imposed a fine; its action was sustained by the United States District Court for the District of New Jersey and the United States

Court of Appeals for the Third Circuit. See *Pfitzinger v. United States Civil Service Commission*, 96 *F. Supp.* 1 (*D. C. D. N. J.* 1951), affirmed 192 *F. 2d* 934 (*3 Cir.* 1951). The fine was paid and Mr. Pfitzinger continued in his employment as an inspector in the State Highway Department.

In 1958 the State Highway Commissioner charged Mr. Pfitzinger with conduct unbecoming an employee in the public service in that he allegedly had (1) refused to submit favorable reports on materials until given gratuities of various sorts, (2) violated Department directives that employees should not accept gifts or gratuities from persons doing business with the Department, (3) permitted contractors and suppliers doing business with the Department and its contractors to collect and pay his attorney's fees in the Hatch Act proceeding, and (4) requested contractors and suppliers doing business with the Department and its contractors to collect and pay his attorney's fees in the aforementioned matter. After a departmental hearing, Mr. Pfitzinger was suspended and removed from his employment for (1) conduct unbecoming an employee, (2) neglect of duty and (3) violation of departmental regulations or orders of his superior officers. He appealed to the State Civil Service Commission and received a *de novo* hearing before that body.

During the hearing before the State Civil Service Commission, Mr. Herbert testified that he was an officer of Dallenbach Sand Co., that Mr. Pfitzinger had asked him where he could get "some help" in connection with the Hatch Act charge and that he had sent him to Mr. Richardson. He denied that he or his company had paid the fine imposed on Mr. Pfitzinger or had made any specific payments to Mr. Richardson for legal services rendered to Mr. Pfitzinger. Mr. Richardson was called as a witness before the Commission on February 2, 1959 and was asked (1) whether he submitted a bill for services to Mr. Pfitzinger, (2) whether Mr. Pfitzinger paid the bill for legal services, (3) whether any one else paid the bill for legal services

and (4) what bank he did business with as an attorney from 1949 through 1952. Although he was ordered to answer these questions he refused to do so, asserting the attorney-client privilege. On April 29, 1959 Mr. Richardson was again called to testify; at that time he refused to state the name, address or business of the person who paid the bill for services or the amount of the bill and when and how it was paid or whether he had any books and records reflecting the payment.

██ Pursuant to an application of the Attorney General, the Mercer County Court issued an order directing the respondent to show cause why he should not be adjudged guilty of contempt for his failure to testify and produce his records before the State Civil Service Commission. See *N. J. S. A.* 11:1–13. After hearing argument, the court sustained the respondent's claim of privilege and entered a formal order dated July 2, 1959, discharging the order to show cause. The right of the appellants to appeal from this order is not in anywise challenged in the briefs before us but counsel for Mr. Pfitzinger, in a letter addressed to a presiding judge of the Appellate Division, has suggested that the matter before the Mercer County Court was a criminal contempt proceeding and its discharge of the order to show cause was therefore nonappealable and that, in any event, the matter is moot because the hearing before the Civil Service Commission has been closed. The real design of the appellants is not to punish the respondent for his refusals before the Commission but to obtain his testimony and records through the aid of the judicial process; and at oral argument the respondent took the fair position that while he considered himself bound to assert the attorney-client privilege, he would readily furnish the testimony and records to the Commission in the event this court determines that the claim of privilege lacks legal foundation. Under the circumstances the proceeding must be viewed as in the nature of civil rather than criminal contempt and the order must be deemed reviewable in the same manner as

other final judgments in civil causes. See *R. R.* 2:2–1; *Penfield Co. of Cal. v. Securities & Exch. Comm.,* 330 *U. S.* 585, 590, 67 *S. Ct.* 918, 91 *L. Ed.* 1117, 1122 (1947); *cf. Danes v. Smith,* 22 *N. J. Super.* 292, 293 *(App. Div.* 1952). See also *Note, "Use of contempt power to enforce subpoenas and orders of administrative agencies,"* 71 *Harv. L. Rev.* 1541 (1958). Although the hearing before the Commission was closed, the Attorney General stated at oral argument that if the claim of privilege were rejected by this court he would move to reopen the hearing for the purpose of including the respondent's testimony and records. And while we understand that subsequent to the oral argument the Commission did file a decision finding the defendant guilty of some charges and not guilty of others, the time for appeal and cross appeal from that decision has not expired and the parties have not made any application before us grounded on its filing. Under the circumstances we have concluded that the appeal should not be dismissed as moot.

 The attorney-client privilege is firmly imbedded in our common law although in our State it has never been formally set forth in either constitutional or statutory provision. See *State v. Toscano,* 13 *N. J.* 418, 424 (1953). It is the oldest of the privileges for confidential communications and although its early origins involved considerations for the oath and honor of the attorney it is now recognized as resting upon the policy in favor of affording to the client freedom from apprehension in consulting his legal adviser. See 8 *Wigmore, Evidence,* § 2290, *pp.* 547, 548 (*3d ed.* 1940). Since the privilege results in the exclusion of evidence it runs counter to the widely held view "that the fullest disclosure of the facts will best lead to the truth and ultimately to the triumph of justice." See *In re Selser,* 15 *N. J.* 393, 405 (1954). The policy supporting full disclosure necessarily competes with the policy supporting the privilege and courts are frequently required to balance them; in the process they properly point out that since the policy of full disclosure is the more fundamental one, the privilege is not

to be viewed as absolute and is "to be strictly limited to the purposes for which it exists." See *In re Selser, supra,* 15 *N. J.,* at *page* 405; 8 *Wigmore, supra,* § 2291, *p.* 557.

■ The privilege relates generally to confidential communications from the client (or his agent) to the attorney but does not ordinarily extend to communications from third persons. See 8 *Wigmore, supra,* § 2317, *pp.* 615–616; *cf. McCormick, Evidence,* § 95, *p.* 190 (1954); 58 *Am. Jur., Witnesses,* § 492, *p.* 275 (1948). Nor does it extend to every type of confidential communication from the client to the attorney. See *In re Selser, supra,* 15 *N. J.,* at *page* 406; *cf. State v. Toscano, supra,* 13 *N. J.,* at *page* 424. In the *Selser* case an attorney declined to disclose revelations by his client concerning his continuing activities in bribing public officials, claiming that the confidential information was privileged from disclosure by the attorney-client relationship. In rejecting his contention, this court relied on the settled doctrine which excludes the privilege where the client has consulted the attorney in reference to a future criminal or fraudulent transaction. See *Matthews v. Hoagland,* 48 *N. J. Eq.* 455, 465 (*Ch.* 1891); *In re Stein,* 1 *N. J.* 228, 236 (1949); 8 *Wigmore, supra,* § 2298, *p.* 573. In the *Toscano* case this court noted that authorities throughout the country hold that while the privilege protects generally against the disclosure of confidential communications from the client to his attorney it is not intended to permit concealment by the attorney of the identity of his client, citing *Behrens v. Hironimus,* 170 *F. 2d* 627 (4 *Cir.* 1948); *United States v. Pape,* 144 *F. 2d* 778 (2 *Cir.* 1944), *certiorari* denied 323 *U. S.* 752, 65 *S. Ct.* 86, 89 *L. Ed.* 602 (1944); *People ex rel. Vogelstein v. Warden of County Jail,* 150 *Misc.* 714, 270 *N. Y. S.* 362 (*Sup. Ct.* 1934), affirmed 242 *App. Div.* 611, 271 *N. Y. S.* 1059 (*App. Div.* 1934); 8 *Wigmore, supra,* § 2312, *p.* 670; *Tomlinson v. United States,* 68 *App. D. C.* 106, 93 *F. 2d* 652, 114 *A. L. R.* 1315, 1321 (1938), *certiorari* denied, *Pratt v. United States,* 303 *U. S.* 642, 58 *S. Ct.* 645, 82 *L. Ed.* 1107 (1938).

In *United States v. Pape, supra,* the defendant was convicted of transporting a woman in interstate commerce for purposes of prostitution. He appealed, contending that his attorney had improperly been compelled to disclose that the defendant had retained him to appear for the prostitute and had paid his legal fee. In rejecting this contention and holding that the privilege did not preclude the disclosure by the attorney of the person who retained him and paid his fee the court said:

"The authorities are substantially uniform against any privilege as applied to the fact of retainer or identity of the client. The privilege is limited to confidential communications, and a retainer is not a confidential communication, although it cannot come into existence without some communication between the attorney and the—at the stage prospective—client. *United States v. Lee, C. C. E. D. N. Y.,* 107 *F.* 702; *Tomlinson v. United States,* 68 *App. D. C.* 106, 93 *F.* 2d 652, 655, 114 *A. L. R.* 1315, with note collecting the authorities, 1321–1333, *certiorari denied* 303 *U. S.* 646, 58 *S. Ct.* 645, 82 *L. Ed.* 1107; *Mauch v. Commissioner of Internal Revenue,* 3 *Cir.* 113 *F.* 2d 555; 8 *Wigmore on Evidence,* 3d *Ed.* § 2312." 144 *F.* 2d, at *pages* 782–783

In *Mauch v. Commissioner of Internal Revenue,* 113 *F.* 2d 555, 556 (3 *Cir.* 1940), the court, after referring to the privilege as a rule of balance which suppresses some ·truth "so that the general process of administering truth may be furthered," noted that the authorities were almost unanimous in excluding the identity of the client from the protection of the privilege; and while it questioned some of the reasoning it nevertheless agreed that this result was sound since the public interest in the disclosure far outweighed the minor limitation of the privilege.

In *People ex rel. Vogelstein v. Warden of County Jail, supra,* an attorney had appeared in a magistrate's court for 15 defendants charged with lottery violations. He was called before the grand jury and was asked to name the person who had retained him to appear for the defendants, many of whom had acknowledged that they had never employed him or paid him for his services. In declining to answer,

the attorney rested on the privilege but his position was flatly rejected by Justice Shientag in a full opinion which carefully reviewed the precedents and the controlling considerations. The Justice expressed the view that the retention of counsel and the name or identity of the client were not the confidences which the privilege was designed to protect but rather "the statements of the client for the purpose of seeking advice from his counsel were the disclosures which were to be kept secret"; he stressed the thought that concealment of the client would result in injury to the correct and orderly administration of justice which "would be immeasurably greater than the benefit that would enure to the relation of attorney and client"; and he pointed out that the fact that the disclosure might be harmful to the client should not operate to extend the privilege beyond the limited scope dictated by its history and purposes. 270 *N. Y. S.,* at *page* 370.

In *Baskerville v. Baskerville,* 246 *Minn.* 496, 75 *N. W. 2d* 762 (1956), the plaintiff husband obtained a divorce from his wife and the court fixed a counsel fee and alimony for the wife after admitting evidence as to the fee arrangements between the wife and her attorneys. Justice Matson, speaking for the Minnesota Supreme Court, first referred to the cases which state that "fee arrangements made between attorney and client are collateral to the relationship and are not a part of any confidential communication to which a claim of privilege may attach" (see *Strickland v. Capital City Mills,* 74 *S. C.* 16, 21, 54 *S. E.* 220, 222, 7 *L. R. A., N. S.,* 426 (1906); *Ex parte Martin,* 141 *Ohio St.* 87, 47 *N. E. 2d* 388, 395 (1943); *Bank of Lumpkin v. Farmers' State Bank,* 161 *Ga.* 801, 132 *S. E.* 221 (1926); 58 *Am. Jur., Witnesses,* § 510, *p.* 287 (1948); but *cf.* 97 *C. J. S. Witnesses* § 283f, *p.* 803 (1957)) and then had this to say:

"Our holding that no privilege attaches to the fee arrangement between attorney and client is in accord with the basic reason which gives rise to the privileged status of certain confidential communications. The reason underlying the attorney-client privilege is to

encourage a client to disclose fully the facts and circumstances of his case to his attorney without fear that he or his attorney will be compelled to testify as to the communications had between them. Wigmore, in setting out the four fundamental conditions upon which is based a privilege of nondisclosure of communications between persons standing in a confidential relationship (including attorney and client), states that the element of confidentiality must be of such a nature that it is essential to the full and satisfactory maintenance of the relation between the parties. It is difficult, if not impossible, to see how the denial of the privilege as to communications regarding fees would have an adverse effect on a client's willingness to disclose fully the facts relative to his case or that such a privilege is in any way essential to the preservation and maintenance of the attorney and client relationship." 75 N. W. 2d, at *page* 767

In the instant matter, Mr. Pfitzinger sought the respondent's legal advice and guidance in connection with the charge that he had violated the Hatch Political Activity Act; the confidential communications which bore on that matter are acknowledged by the Attorney General to come within the purposes and scope of the privilege and he has not directed any of his inquiries to them. The information he seeks bears on the question of whether a third party paid the legal fees for the services rendered by the respondent to Mr. Pfitzinger. That information might well be subject to disclosure within the authorities which decline to extend the privilege to communications from third persons. See 8 *Wigmore, supra,* § 2317, *pp.* 615–616. Furthermore, if the third party is viewed as an additional client of the respondent, the information would hardly be distinguishable from the disclosures compelled in decisions such as *United States v. Pape, supra,* and *People ex rel Vogelstein v. Warden of County Jail, supra.* And if the third party is a contractor or supplier who does business with the Department or its contractors, then his payment of the fees would, in itself, seemingly constitute participation in wrongful conduct violative of departmental directives and refusal to protect such payment against disclosure would find support in persuasive policy considerations comparable to those underlying deci-

sions such as *In re Selser, supra,* where this court held that the privilege is to be deemed inapplicable where the client consults an attorney in regard to a future crime or fraud even though the attorney himself is free of guilty knowledge. See *Clark v. United States,* 289 *U. S.* 1, 15, 53 *S. Ct.* 465, 77 *L. Ed.* 993, 1000 (1933).

Throughout their judicial endeavors courts seek truth and justice and their search is aided significantly by the fundamental principle of full disclosure. When that principle conflicts with the attorney-client privilege it must, of course, give way but only to the extent necessary to vindicate the privilege and its underlying purposes. The matter is truly one of balance and, on balance, it seems clear to us that there should be removal of the cloak of secrecy which has interfered with determination of the issue as to whether an obligation incurred by the departmental employee for legal services was paid for by a supplier doing business with the Department. The fair administration of justice and the interests of the public call strongly for this course and we are satisfied that it may be taken within the precedents and without impairing the general effectiveness of the privilege in affording to clients a proper measure of freedom from apprehension in consulting their legal advisers. The Mercer County Court erred in discharging the order to show cause and its judgment is accordingly:

Reversed.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For affirmance*—None.