HERMINIO LUGO ORTIZ, Plaintiff and Appellee, v. ENRIQUE LUGO ORTIZ and JAIME FERRER, Defendants and Appellant the latter.

No. 298. Decided June 29, 1962.

834

*Luis A. Negrón López* and *Luis Nieves López* for appellant. *Aníbal Padilla* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Defendant Jaime Ferrer filed a petition to review the judgment of the trial court sustaining the action of redemption brought by Herminio Lugo Ortiz, alleging the commission of the following errors: (1) the dismissal of the defense of prescription of the action; and (2) the refusal to admit in evidence the testimony of the secretary of the notary before whom the public documents of sale which gave rise to the litigation were executed. It is necessary to make a brief summary of the facts in order to understand adequately these contentions.

Upon the death of the spouses Mariano Lugo Ortiz and María Ortiz Vega there was created a hereditary community composed, among others, of their successors Herminio, Enrique, Carlos, Antonio, and Fidelina Lugo. By deed No. 43 of November 13, 1957 executed before Notary William Morales Torres, defendant Jaime Ferrer acquired all the "rights and actions" corresponding to coheir Enrique Lugo Ortiz in the community, the plaintiff having learned of such conveyance on the following December 21. Five days later he brought an action to redeem this undivided interest and to that effect he deposited in favor of the vendee the sum of $750, price of the sale, and assumed the obligation to pay the expenses of the contract and any other legitimate payment made by reason of the sale, as well as the expenses incurred by the thing sold. Section 1407 of the Civil Code, 1930 ed., 31 L.P.R.A. § 3912. According to Rule 33 of the Rules of Civil Procedure in force at that time, on March 25, 1958 the plain-

tiff served interrogatories upon the defendant, and among the information requested he inquired on the extent of any ownership interest which he might have in the properties of the hereditary estate which had been described in the complaint. On the following April 29 the defendant stated that he had acquired the interest of Enrique Lugo by the deed already mentioned and, subsequently, those corresponding to coheirs Carlos, Antonio, and Fidelina Lugo, in January and February 1958.

Upon learning of these latter conveyances, on May 5 the plaintiff filed a motion within the action already brought, which he entitled deposit, signifying his intention to redeem the interests sold and proceeded to deposit the amount of $2,450, the price of the sale. He did not incorporate any other allegation. On July 10 the court entered an order directing the plaintiff to file an amended complaint "in order that the action may be prosecuted with all procedural correctness and to insure complete justice between the parties." It was so done six days later, on July 16.

1. The defendant insists that, as respects the last three interests, the action of redemption has prescribed because it was brought after the nine-day period counted as of the time the redeemer alleges he had knowledge of the sale transaction, since seventy-eight days had elapsed between the date of notice of the answer to the interrogatories—April 29—and the filing of the amended complaint—July 16.

The period within which to exercise the action in this case is not nine days, as alleged by the appellant, but the thirty days as prescribed by § 1020 of the Civil Code, 1930 ed., 31 L.P.R.A. § 2886. As stated in *Rivera* v. *Archevald*, 83 P.R.R. 582 (1961), "even if the community by hereditary transfer were agreed, when the coheir merely sells his undivided share in one or several particular properties of the inheritance estate, the relief to which his redeeming coheir

is entitled is the redemption of co-owners. In order that the hereditary redemption may take place, it is necessary that the object of the transfer shall have been the heir's hereditary quota or share in the estate, since, as we have pointed out, the underlying purpose of the precept is to prevent the intervention of a stranger in the division operations. That is why the legal provision expressly provides that resort may be had to the successory subrogation only when the sale has taken place *before* the division. Scaevola, *op. cit.* at 667, says that this right of redemption subsists 'as long as the community which is brought to an end by the division shall last,' and makes reference to French decisions holding that such redemption 'should not be admitted where the assignment did not include the whole of the assignor's successory rights, but only a quota share in one or in many specific real properties' (at 674). Lastly, he states that 'where a sale of specific things of the inheritance has been carried out, such sale bars the exercise of the right of successory redemption' (at 675). In the Judgment of February 12, 1904 (97 *Jur. Civ.* 331) the Supreme Court of Spain expressly states that § 1067 of the Spanish Civil Code, counterpart of § 1020 of Puerto Rico, applies only in the case of an indeterminate successory right. See, also, Calvo y Camina, *Contrato de Coherederos*, II *Revista de Derecho Privado* 176 (1915)." Since in the instant case the object of the conveyance was the indeterminate rights in the whole of the inheritance estate, the redemption in question is a hereditary redemption for which there is fixed a thirty-day period. That is why it was not necessary either to assume the obligation not to sell during four years the three interests sought to be redeemed, as required by subd. 5 of § 1616 of the Law of Civil Procedure for Cuba and Puerto Rico, *Fuertes* v. *Arzón*, 81 P.R.R. 479 (1959) ; *Quiñones* v. *Alcaide*, 72 P.R.R. 670 (1951) ; *Vellón* v. *Central Pasto Viejo*, 34 P.R.R. 226 (1925), since this allegation is inherent and required only in the redemption of co-owners, *Zalduondo* v.

*Iturregui*, 83 P.R.R. 1 (1961); *Noble* v. *Rodríguez*, 69 P.R.R. 447 (1949); *Martínez* v. *Pirallo*, 61 P.R.R. 87 (1942).[1]

 The action of redemption being in this jurisdiction an ordinary civil action, the prosecution thereof is governed by the provisions of the Rules of Civil Procedure, *Zalduondo* v. *Iturregui*, 83 P.R.R. 1, 17 (1961), the essential purpose of which is to permit the adjudication of the controversies in a speedy and economic manner, free from purely legalistic formalisms and subtleties. Although it may well be conceded that the most adequate procedure was to bring an independent action to redeem these three interests or to file a supplemental complaint, as provided by Rule 13.4 of the Rules of Civil Procedure of 1958,[2] under the circumstances of this case we can not agree that the justice sought by the plaintiff should be denied, inasmuch as his motion for deposit of May 5 may be considered as the initial step for the recognition of the right of redemption to which he is entitled as coheir under the law. In this connection, the action was interposed since that date, namely, within the thirty-day period. The only effect of the amended complaint was that of a procedural refinement, with more specific allegations, but it is unquestionable that the defendant was sufficiently apprised of the intentions of the plaintiff since the motion for deposit was filed and the

---

[1] Even though this allegation is essential, in *Noble* v. *Rodríguez*, 69 P.R.R. 447 (1949), we held that the fact that a complaint by co-owner for redemption is defective because the allegation is omitted, does not bar the redeemer from amending the same by including such allegation, in which case the amended complaint should relate back to the date of the original complaint. In any event, had it been necessary to assume the obligation, the same was formulated in the amended complaint of July 16.

[2] Rule 13.4 reads as follows:

"Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading *setting forth transactions, occurrences, or events which have happened since the date of the pleading sought to be supplemented*, even if the original claim is inadequate in its statement of the application for relief. If the court deems it advisable that the adverse party plead thereto, it shall so order specifying the time therefor." (Italics ours.)

amount of the selling price of the hereditary shares was placed at his disposal.

The error assigned was not committed.[3]

2. In order to conclude the presentation of his evidence before the trial court, the defendant offered the testimony of witness Edwin Feliciano who was identified as the secretary of William Morales Torres before whom the different public instruments conveying the interests sought to be redeemed were executed. The attorney for the plaintiff objected to the giving of the testimony alleging that "the secretary is not permitted to testify on any transaction consummated in the office of colleague William Morales." After a brief argument during which the judge's attention was invited to the absence in this case of the relationship contemplated by the privilege invoked, the objection was sustained. However, permission was granted to announce the content of the testimony which the witness proposed to give. Briefly, his attestation would merely establish that after signing the deed whereby defendant Ferrer acquired the share or interest of Enrique Lugo Ortiz—"let us say seven or eight days after the execution of the deed"—the plaintiff asked him whether the sale in question had been executed and that the witness answered in the affirmative.

The importance of this statement is evident, because if it is believed by the judge, it would establish beyond doubt the defense of prescription invoked by the appellant and would defeat the action brought as respects the redemption of this interest. As may be seen, a simple calculation of the time elapsed between the first time plaintiff knew of the sale, and which the testimony places between November 20 and 21,

---

[3] In the event the redemption sought by the plaintiff of the interest of his brother Enrique were not successful, the statement relating to the absence of error in connection with this assignment should not be understood as denying to defendant Ferrer his position that he is not a stranger in the hereditary community. See § 1412 of the Civil Code, 1930 ed., 31 L.P.R.A. § 3922; cf. Zalduondo v. Iturregui, 83 P.R.R. 1 (1961).

1957, and the filing of the action, would exceed the thirty-day period.[4]

■ Section 40 of the existing Law of Evidence, 32 L.P.R.A. § 1734,[5] provides in subd. 2 that:

" . . . . . . . .

"2. An attorney can not, without the consent of his client, be examined as to any communication made by the client to him or his advice given thereon in the course of professional employment; nor can an attorney's secretary, stenographer, or clerk be examined, without the consent of his employer ■ concerning any fact the knowledge of which has been acquired in such capacity..."

■ Since 1923, in *Tomás Cano & Co.* v. *Robles et al.*, 32 P.R.R. 591, 596, we held that the instructions or communications to a notary are not privileged and that "a notary differs from a lawyer in this regard." See *Martínez* v. *Asencio et al.*, 35 P.R.R. 481, 483, 484 (1926); *López* v. *López*, 47 P.R.R. 794, 798 (1934); and *Calderón* v. *Cacho*, 62 P.R.R. 593, 603–04 (1943), in which we explained the difference pointed out in the following language:

"The admissibility of that evidence depends upon whether

---

[4] Assuming, according to the proposed statement, that the date most favorable to plaintiff is November 21, the term would expire on Saturday, December 21, Monday the 23 being the next workday. Section 388 of the Political Code, 1 L.P.R.A. § 72; Rule 68.1 of the Rules of Civil Procedure of 1958. The action was brought three days later, on December 26, 1957.

[5] In Rule 205(1)(a) of the Rules of Evidence which the Supreme Court has submitted on repeated occasions to the Legislative Assembly, the definition of attorney proposed by the Advisory Committee on the Rules of Evidence eliminated any reference to "the associates, assistants, and office employees" of the attorney.

no advice regarding the legal effect of the contract had been sought from Attorney Ángel Rivera Colón by the contracting parties. If they merely asked him to draft the contract, without requesting any legal advice from him as to the rights and obligations which might arise from the transaction, in other words, if his intervention was confined to serving as a mere instrument in order to put in writing what they said they had agreed upon, in that event, Mr. Rivera Colón, in contemplation of law, did not act in his capacity as attorney; and if under the circumstances surrounding the conversation and in the course thereof the parties, or either of them, in the presence and within the hearing of the other, without any protest on the part of the latter, stated to him that the transaction was simulated, in that event the communication was not privileged and was therefore admissible. If on the contrary the attorney was consulted regarding the legal effect of the contract which he was about to draft, that is, regarding the rights and obligations of the parties as lessor and lessee, respectively, etc., and if in the course of that conference he was informed that the contract was simulated, then the communication, unless the simulation was made for a fraudulent purpose, was privileged and, as such, was not admissible in evidence without the consent of the defendants."

 The fundamental purpose of the statutes which protect the privileged communications between attorney and client is to encourage the confidential relationship between both, thereby enabling the client to make a full and accurate disclosure of the facts when procuring legal advice. When this relationship is complete there is a possibility of discouraging untenable and worthless litigations as respects their results. Together with this public policy of preventing unnecessary litigation, there is another social value worthy of similar protection, such as the necessity that all the pertinent facts be laid before the trier to enable him to form a judgment weighing all the elements of proof available to him. That is why the interpretation of the provisions which consecrate the privileged character of these communications is restrictive, and why the evidence must be admitted unless it is clearly comprised within the exclusion of the statute. *People* v.

*Donovan*, 369 P.2d 1 (Cal. 1962); *Greyhound Corporation* v. *Superior Court*, 364 P.2d 266 (Cal. 1961); *In re Richardson*, 157 A.2d 695 (N.J. 1960). That is why evidence on privileged statements or communications is generally admissible when it is acquired through the testimony of a third person who was present or overheard the same. In California, from which our § 40 was taken—see § 1881 of the Code of Civil Procedure of California—it has been said that the statute extends the client's privilege to preclude examination of the secretary, stenographer, or clerk of the attorney regarding information acquired in relation to communications between attorney and client to rule out the possibility of their coming within the general rule which admits evidence acquired through the testimony of a third person. *City & County of San Francisco* v. *Superior Court*, 231 P.2d 26, 30 (Cal. 1951).

 From the foregoing facts it appears clearly that the plaintiff could not invoke the question of privileged communications to preclude the admission in evidence of the testimony of Edwin Feliciano because: (1) there was no attorney-client relationship between the plaintiff and William Morales; (2) said attorney acted exclusively within his function of attesting publicly to a document; and (3) the purpose was not to disclose communications or statements made, but rather to disclose a fact which readily could be of general knowledge because at that time it must have been reported in the indexes which the notary is required to remit weekly to the clerk of the superior court. Briefly, that the objection was clearly untenable.

 As explained above, this matter is of utmost importance in the final disposition of the litigation and, consequently, the exclusion of this evidence was a grossly prejudicial error.

842

The judgment rendered by the Superior Court, Ponce Part, on March 2, 1960, will be reversed and the case remanded with directions to hold a new trial as respects the action of redemption only.[7]

---

[7] This reversal does not alter the judgments rendered by the trial court as to causes of action on specific performance of contract and damages which were originally joined in the action of redemption.