156 N.J. Super. 316 (1978)
383 A.2d 1158
IN RE HERSCHEL KOZLOV, ESQ.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 1978.
Decided February 15, 1978.
*317 Before Judges MICHELS, PRESSLER and BILDER.
Mr. Joseph H. Kenney argued the cause for appellant (Messrs. Archer, Greiner & Read, attorneys; Mr. Charles Lee Harp, Jr. on the brief).
Mr. Peter Brennan, Deputy Attorney General, argued the cause for respondent State of New Jersey (Mr. John J. Degnan, *318 Attorney General of New Jersey, Mr. William F. Hyland, former Attorney General of New Jersey).
The opinion of the court was delivered by PRESSLER, J.A.D.
Herschel Kozlov, an attorney at law of this State, appeals from an order holding him in contempt in facie curiae when he refused to comply with an order of the trial judge directing him to disclose his client's identity. The penalty imposed was a fine of $50.
The circumstances leading to the issuance of the disobeyed order are not disputed. In December 1976 one Floard Catlett, the police chief of the Borough of Lawnside, had been convicted of crime in what was apparently a trial of some local notoriety. In early January 1977 Kozlov, who had had nothing at all to do with that trial or with anyone therein involved, received information from a client of his that he, the client, had overheard a conversation in which one of the jurors in the Catlett trial had "made statements with respect to getting even with the defendant [Catlett] for the arrest and prosecution of a member of his family." The client, however, had conveyed this information to Kozlov only after being assured by him that he, the client, would not become directly or publicly involved. It was clearly the client's understanding that while Kozlov would convey the substance of the communication to appropriate persons, he would not convey his source of that information. The communication itself was made during the course of a meeting between Kozlov and the client dealing with the client's legal business to which the Catlett matter was wholly extraneous, and there is nothing in the record to suggest that the client had any connection therewith, direct or indirect, other than the conversation he had overheard and the fact that he knew the juror's identity.
Kozlov immediately communicated with Catlett's attorney, Carl D. Poplar, repeating to him what he had heard from his client and emphasizing again that his client had disclosed *319 that information only on his, Kozlov's, assurance that the client's identity would be kept secret. Poplar investigated Kozlov's information and discovered that a person bearing the same surname as the juror in question and residing at his address had in fact been the defendant in a disorderly person's proceeding in the Borough of Lawnside Municipal Court.[1] He thereupon made application pursuant to R. 1:16-1 to the judge who had presided at Catlett's trial seeking to have the juror interviewed. The application was supported by Poplar's affidavit which contained Kozlov's hearsay, a recitation of the pertinent facts of the Lawnside Municipal Court proceeding and the recollection that at the voir dire of prospective jurors the juror in question, as did all the others ultimately sworn, denied knowing Catlett or having any reason for bias against him.
It appears from the record that the trial judge was not satisfied with the sufficiency of Poplar's affidavit as a basis for initiating the juror-interrogation process since the affidavit relied exclusively on the hearsay information and the municipal court record, which on its face showed no direct link between the juror and Catlett.[2] Accordingly, he scheduled an in camera hearing which Poplar, the prosecuting attorney in the Catlett trial, and Kozlov were requested to attend. Kozlov sought and was granted leave to be represented by counsel at the hearing. Although there was substantial colloquy on the question of whether the attorney-client privilege would *320 protect Kozlov's refusal to identify his client, no determination of the issue was then made for the reason that Kozlov had not been able to reach the client prior to the hearing and was apparently hopeful that when he, the client, returned from a short business trip he was then on, either he, Kozlov, or his attorney would be able to persuade the client to consent to the divulging of his identity. The hearing was continued several days later, Kozlov again testifying under oath as to the circumstances and substance of the client's communication to him. He further reported that the client would agree to the revealing of his identity for purposes of the in camera proceeding only if he could be assured that his name would not be made public, his motive apparently being to avoid the embarrassment and derision which he felt would result from public disclosure. The trial judge's response was that while the client's name would not be disclosed if disclosure were unnecessary, nevertheless he, the trial judge, could not give any advance assurance that disclosure might not become necessary during some subsequent post-trial open-court proceeding in the Catlett case. He thereupon ruled that the attorney-client privilege was inapplicable and ordered Kozlov to name his client. Kozlov, after being given the opportunity to confer privately with his attorney, refused to do so, still relying on the privilege from which, he explained, his client had refused, despite his request, to release him. After expressing his reluctance to have to hold in contempt a reputable member of the bar acting in good faith, the trial judge nevertheless observed that he had no further options and concluded that portion of the in camera proceeding by declaring Kozlov in contempt and ordering him to pay a $50 fine.
Kozlov's appeal is predicated on two contentions: first, that the attorney-client privilege was improperly disallowed by the trial judge, and second, that even if the privilege did not apply to the withholding of the client's identity, the contempt was not in facie curiae and hence was required to *321 have been prosecuted pursuant to R. 1:10-2 rather than summarily pursuant to R. 1:10-1.
As to the first of these contentions, we are persuaded that in the circumstances here, the privilege did not apply. The common-law attorney-client privilege, now codified by Evid. R. 26, N.J.S.A. 2A:84A-20, and recognized as the oldest of the privileges for confidential communications, rests "upon the policy in favor of affording to the client freedom from apprehension in consulting his legal advisor." In re Richardson, 31 N.J. 391, 396 (1960). Proper exercise of the privilege presupposes the existence of all of the prerequisite elements of the attorney-client relationship, namely, that a client has sought legal advice of any kind from a lawyer in his capacity as such and the communication relating to that purpose is made in confidence. Such a communication is at the client's instance permanently protected from disclosure by himself or his lawyer except if he has waived that protection. See generally, 8 Wigmore, Evidence (McNaughton rev. 1961), § 2292 at 554. And see Evid. R. 26(3). Our courts have, however, consistently recognized that the privilege runs counter to the even more fundamental policy supporting full disclosure in litigation, and hence the privilege should not be construed, applied or extended beyond its essential purpose. In re Richardson, supra, 31 N.J. at 396-397.
The privilege is hence subject, on public policy grounds, not only to exceptions based on the nature of the communication,[3] but by the great weight of authority is ordinarily interpreted as not protecting an attorney's refusal to reveal his client's identity. See State v. Toscano, 13 N.J. 418 (1953); In re Richardson, supra. And see 8 Wigmore, *322 supra. See, also, cases collected in Annotation, "Disclosure of Name, Identity, Address, Occupation or Business of Client as Violation of Attorney-Client Privilege," 16 A.L.R.3d 1047 (1967). The basic reason for the rule that the client's identity is not within the privilege is explained by Wigmore as grounded in the proposition that "the privilege cannot be used to evade a client's responsibility for the use of legal process." 8 Wigmore, op. cit., § 2313 at 609. It is, moreover, suggested by Wigmore that the general exceptions to the privilege, both with respect to the substance of the communication and with respect to the identity of the client, are justified as a matter of policy because they represent situations in which the privilege would unduly obstruct the fair opportunity for investigating facts. Thus in civil cases the witness-client can be compelled to disclose his knowledge both by way of pretrial discovery and when he testifies at trial, the privilege notwithstanding. In criminal actions the attorney-client privilege cloaks nothing more than would already have been cloaked by the defendant's exercise of his option not to testify. Id., § 2299 at 579. Thus, while confidentiality of the communication is therefore not ordinarily unduly obstructive or untenably competitive with the full disclosure principle, confidentiality of the identity of the client is, since obviously, absent his identity, there can be no realistic opportunity to discover or to test the relevant information which he has.
We recognize that courts of our sister states and the federal courts have occasionally recognized, in particular circumstances, exceptions to the general rule that identity is not within the privilege. See, e.g., N.L.R.B. v. Harvey, 349 F.2d 900 (4 Cir.1965); Baird v. Koerner, 279 F.2d 623 (9 Cir.1960); In re Kaplan, 8 N.Y.2d 214, 203 N.Y.S.2d 836, 168 N.E. 2d 660 (Ct. App. 1960). And see cases collected in Annotation, supra. Our review of this case authority persuades us that it deals exclusively with those exceptional circumstances in which revelation of the client's identity would be tantamount to revelation of *323 an as yet undisclosed privileged communication itself or where a balancing of the underlying purpose of the privilege against the principle of disclosure weighs heavily in favor of the privilege. We are satisfied that no such special circumstances are here present. The entire substance of the privileged communication[4] had already been disclosed.[5] There was thus nothing vis-a-vis the communication itself which the divulgence of the client's identity could have resulted in further disclosing. More significantly, we are satisfied that here the balancing test weighs so heavily in favor of full disclosure as to restrain us in the interests of substantial justice from any new extension of the privilege. As Justice Jacobs observed in In re Richardson, supra:
*324 Throughout their judicial endeavors courts seek truth and justice and their search is aided significantly by the fundamental principle of full disclosure. When that principle conflicts with the attorney-client privilege it must, of course, give way but only to the extent necessary to vindicate the privilege and its underlying purposes. The matter is truly one of balance * * *. [31 N.J. at 401]
In the complex of rights and obligations here involved, it is plain to us that the interests most necessitous of solicitous protection are the right of a criminal defendant to a fair trial and, in that context, the integrity of the criminal trial by jury. The protection and advancement of these interests are substantially impeded by anonymous charges which, because of their anonymity, cannot be put to the test, cannot be put to rest, and create an irremediable cloud over the criminal justice process. On the other hand, we have one citizen who is willing that all he knows be told so long as he is spared embarrassment.[6] While his interest may not be totally without significance it is not an interest entitled to priority here.
Kozlov argues that if the identity of his client is not protectable through the attorney-client privilege, others will be deterred from coming forth with information useful to the justice system. We do not, however, regard anonymously transmitted information as necessarily useful. The inability of Catlett's attorney here to persuade the trial judge to interrogate the juror in question on the basis of anonymous hearsay is surely sufficiently illustrative of the nonutility of that kind of information. Anonymous charges have no place in a justice system predicated upon procedural due process and its prerequisites of confrontation and cross-examination. *325 We would further note that even the informer's privilege must give way to the criminal defendant's right to a fair trial. See Evid. R. 36.
Kozlov also contends that he was placed in an unresolvable dilemma by facially contradictory provisions of the Disciplinary Rules of the Code of Professional Responsibility. See R. 1:14. He points out that DR 4-101(B) requires an attorney to maintain the secrets of his client, whether or not they are protected by the attorney-client privilege, and at the same time DR 7-108(E) requires an attorney to "reveal promptly to the court improper conduct of a venireman or a juror * * * of which the lawyer has knowledge." That conflict is more apparent than real, however, and the Code itself has resolved it by its statement that a lawyer may reveal the confidences and secrets of a client when required to do so by court order. DR 4-101(c)(2). It is evident that the balancing test upon which we here rely is the basis as well for the absolute requirement of DR 7-108(E) as compared to the qualified requirement of DR 4-101(B).
We are not unsympathetic to the position Kozlov found himself in here. It stemmed, however, from a promise to a client which was improvident and which should have been anticipated to lead to the confrontation which took place here. Kozlov was acting in good faith when he disobeyed the order of the trial judge, but he was also acting at his peril and presumably with full knowledge that the contempt order he was inviting would have been in error only if he and not the trial judge were ultimately proved correct on the privilege question. See Evid R. 40(2).
Kozlov further argues that the trial judge erred in proceeding summarily pursuant to R. 1:10-1 and that he should have been limited to the initiation of proceedings pursuant to R. 1:10-2. We disagree. The contempt in facie curiae subject to disposition pursuant to R. 1:10-1 is conduct which is committed wholly in the presence of the trial judge and certainly includes action by an attorney in direct *326 disobedience to an order directed to him during a court proceeding which requires his immediate compliance. See In re Logan, Jr., 52 N.J. 475 (1968); In re Carton, 48 N.J. 9 (1966); In re Clawans, 69 N.J. Super. 373 (App. Div. 1961), certif. den. 36 N.J. 296 (1962), cert. den. 370 U.S. 905, 82 S.Ct. 1250, 8 L.Ed.2d 401 (1962). And see In re Fair Lawn Ed. Ass'n, 63 N.J. 112, 114-115. It also comprehends the refusal of a witness to answer a question when ordered to do so, whether or not the refusal is based on an erroneous claim of privilege and whether or not the refusal is respectfully phrased. See U.S. v. Wilson, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed. 2d 186 (1975). We are also satisfied that the trial judge was assiduous in affording Kozlov an opportunity to be heard on the law (the facts were never in dispute), to be represented by counsel and to retreat before holding him in contempt. Compare In re Logan, supra.
Finally, Kozlov suggests that since the subject proceedings were in camera rather than in open court, the contempt was by definition, not in facie curiae. That contention is wholly without merit. The proceeding was formal, recorded, and an integral component of the Catlett trial. It was not held in open court because its subject was the potential interrogation of a juror after the entry of the verdict, a matter appropriately heard in camera. See Scott v. Salem Cty. Memorial Hosp., 116 N.J. Super. 29, 33 (App. Div. 1971). And compare McAllister v. McAllister, 95 N.J. Super. 426, 434 (App. Div. 1967).
Affirmed.
NOTES
[1] The municipal court record shows a complaint signed by a private citizen and witnessed by a police officer (not Catlett) charging shoplifting (one box of Pampers of the value of $.93) and use of offensive language. The defendant pleaded not guilty to both charges, was acquitted of the offensive language charge and convicted of the shoplifting charge for which a fine of $50 and court costs of $25 were imposed.
[2] We do not comment on the ultimate correctness of the trial judge's view of the adequacy of the Poplar affidavit, particularly as we are informed that Catlett's appeal from the conviction is based in part on the trial judge's refusal to interrogate the juror.
[3] See, e.g., Evid. R. 26(2) codifying the common law by excluding from the privilege communications in aid of the commission of a crime or fraud, communications relevant to an issue between parties all of whom claim through the client, and communications relevant to an issue of breach of duty between lawyer and client.
[4] It has been cogently argued by the Attorney General that the attorney-client privilege does not here apply at all because the subject information communicated by the client to Kozlov was not for the purpose of obtaining any legal advice but was simply in the nature of extraneous conversation. The record is not altogether clear as to whether, as a matter of fact, that view of the communication is correct or if indeed the client was seeking his attorney's advice as to what he should do about the information he had come upon. In view of the factual uncertainty as presented by this record, we will assume for purposes of this appeal that the communication itself was within the privilege since it is our ultimate holding that even if the communication was privileged, the client's identity in these circumstances was not.
[5] The parties do not argue that the client's authorization to Kozlov to reveal the substance of the communication constituted a waiver of everything of an otherwise confidential nature pertaining to that communication. Without, therefore, passing on the question we note that Evid. R. 37 expressly provides that any privilege is waived if "without coercion and with knowledge of his right or privilege [the holder of the privilege] made disclosure of any part of the privileged matter or consented to such a disclosure made by anyone." It may, therefore, be seriously questioned as to whether or not having authorized Kozlov to communicate the substance of the communication, the client could thereafter insist upon the privilege insofar as it concerned his identity.
[6] We are not dealing here with fear of physical reprisals which was the factual background in In re Kaplan, supra, in which an attorney transmitted information to a public investigating commission concerned with criminal practices involving the New York City waterfront and it was the lawyer's concern that identification of his source would prejudice his client's physical safety and security.