263 N.J. Super. 325 (1993)
622 A.2d 1320
DRY BRANCH KAOLIN COMPANY, A DELAWARE CORPORATION, WILLIAM L. HARTLEY AND CORNELIUS J. BOYLAN, PLAINTIFFS-APPELLANTS,
v.
JOHN DOE, RICHARD ROE AND ROBERT ROE, INDIVIDUALS WHOSE IDENTITIES ARE NOT CURRENTLY KNOWN TO PLAINTIFFS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 10, 1992.
Decided March 25, 1993.
*326 Before Judges BILDER, BAIME and WALLACE.
Frederick L. Whitmer argued the cause for appellant (Pitney, Hardin, Kipp & Szuch, attorneys; Mr. Whitmer and Peter James Herrigel, on the brief).
Peter L. Korn argued the cause for respondent (McDonough, Korn & Eichhorn, attorneys; Mr. Korn, of counsel; Thomas M. Moriarty, on the brief).
The opinion of the court was delivered by WALLACE, J.S.C. (temporarily assigned).
Plaintiffs, Dry Branch Kaolin Company and two of its officers, William L. Hartley and Cornelius J. Boylan filed a defamation *327 action against an anonymous former employee.[1] The alleged defamatory and libelous statements were contained in a letter from attorney, William Engle, purporting to speak on behalf of an unnamed former executive of Dry Branch, and subsequent letters from "A Former Employee" containing strikingly similar allegations. Plaintiffs instituted a John Doe action and sought by way of deposing Engle to learn the identity of the author of the statements. After Engle asserted the attorney-client privilege, plaintiffs moved to compel Engle to disclose the name of his client. The Chancery Division Judge denied the motion on the basis that disclosure would "undercut the values that underlie the attorney/client privilege." We disagree and reverse.
The facts are uncomplicated. In February 1991, Engle was contacted by a former executive, John Doe, of Georgia Kaolin Company (Georgia) who expressed "concern of possible improprieties on the part of senior management" at Georgia. John Doe sought counseling "on what steps might be taken to bring these improprieties to the attention of management at Asea Brown Boveri [ABB], the parent company of Georgia [the corporate stock holder of Dry Branch]." As a result of this meeting on March 11, 1991, Engle wrote a letter to Gerhard Schullmeyer of ABB outlining the "serious ethical, and even potential criminal, questions about the conduct of senior management of Georgia Kaolin Company." Engle asked Schullmeyer to contact him if he wished to pursue this matter with his client.
ABB received a letter dated April 27, 1991 concerning questionable ethical practices and possible criminal actions at Georgia Kaolin, and was signed "a Former Employee." The letter noted that "these allegations were relayed by my attorney" in a *328 letter to Schullmeyer on March 11. On July 1, 1991, Engle wrote to John P. Brett, Vice President and Chief Counsel for ABB stating that there was nothing left to do regarding representing his client, and therefore, he and his client agreed to terminate their relationship. Engle said that he would forward to his client Brett's letter of June 28, 1991 and would suggest that his client contact Brett directly if he wishes to pursue the matter[2].
In the latter part of July 1991, a letter was addressed to Brett regarding Brett's previous contact with Engle and his delay in responding to Engle's March 22 letter. The letter was signed "a Former Employee."
A subsequent letter dated August 12, 1991 was addressed to Brett referring to the alleged criminal activity of Brett, Hartley and Boylan and stated that the writer of the letter had been in contact with the Internal Revenue Service regarding these illegal transactions.
Plaintiffs attempted to learn the identity of Engle's client but Engle refused to disclose the information. On December 17, 1991, plaintiffs filed a John Doe complaint alleging false, malicious and untrue statements by John Doe and sought injunction and other relief. On January 24, 1992, plaintiffs deposed Engle to learn the identity of his client. Engle acknowledged that he wrote and sent the March 11, 1991 letter to Schullmeyer and the July 1, 1991 letter to Brett but refused to disclose the identity of his client. After plaintiff's motion to compel Engle to disclose his client's identity was denied, we granted plaintiffs' motion for leave to appeal.
Plaintiffs contend that the "extension of the [attorney-client] privilege encroaches upon the rights of Dry Branch, frustrating plaintiffs' efforts to vindicate their good names and is not *329 legitimated by furthering any corresponding judicial or public policy."
N.J.S.A. 2A:84A-20(1) and Evid.R. 26(1) provide in pertinent part:
[C]ommunications between lawyer and his client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (a) to refuse to disclose any such communication, and (b) to prevent his lawyer from disclosing it, and (c) to prevent any other witness from disclosing such communication if it came to the knowledge of such witness (i) in the course of its transmittal between the client and the lawyer....
"The scope of the attorney-client privilege or protections is also subject to ethics rules governing attorney conduct." In re Advisory Opinion No. 544, 103 N.J. 399, 406, 511 A.2d 609 (1986). Under our Rules of Professional Conduct, a lawyer is "not [to] reveal information relating to representation of a client unless the client consents after consultation...." RPC 1.6(a). "[T]his Rule expands the scope of protected information to include all information relating to the representation...." In re Advisory Opinion No. 544, supra (emphasis added) (citing ABA, Model Rules of Professional Conduct, Rule 1.6, Comments).
The Rule sets forth several exceptions under the attorney-client privilege. For example, a lawyer must reveal information relating to representation of a client if the lawyer believes that a disclosure is necessary "to prevent the client from committing a criminal, illegal or fraudulent act" upon the tribunal. RPC 1.6(b)(2). Further, a lawyer may reveal such information to "comply with other law." RPC 1.6(c)(3).
Regarding the question of whether a client's identity is within the protection of the privilege, our Supreme Court has stated:
Doubt may be expressed as to whether the information [about the clients' identities] sought to be elicited from the defendant actually came within the protection of the attorney-client privilege. Most of the authorities hold that while the privilege protects against the disclosure of confidential communications from the client to his attorney, it is not intended to permit concealment by the attorney of the identity of his client.
*330 State v. Toscano, 13 N.J. 418, 424, 100 A.2d 170 (1953) (citations omitted); see Cesena v. Du Page County, 201 Ill. App.3d 96, 146 Ill.Dec. 1044, 1049, 558 N.E.2d 1378, 1383 (1990) (citations omitted). ("The general rule in Illinois is that a client's identity is not protected under the attorney-client privilege."), rev'd on other grounds, 145 Ill.2d 32, 163 Ill.Dec. 911, 582 N.E.2d 177 (1991), cert. denied sub nom. ___ U.S. ___, 112 S.Ct. 1953, 118 L.Ed.2d 556 (1992); Gannet v. First Nat'l State Bank of N.J., 410 F. Supp. 585, 588 (D.N.J. 1976) ("The [attorney-client] privilege does not embrace the client's identity." (citing State v. Toscano, supra)), rev'd on other grounds sub nom. 540 F.2d 619, (3d Cir.1976).
While disclosure of a client's identity may be appropriate, under certain conditions the attorney-client privilege has been used to protect a client's identity. See In re Kozlov, 79 N.J. 232, 398 A.2d 882 (1979) (the attorney may withhold his client's identity because less intrusive sources of the same information were available); In re Advisory Opinion No. 544, supra (the clients' identities may be withheld if disclosure would reveal other information about them, e.g., their mental and financial status); Taylor v. Taylor, 45 Ill. App.3d 352, 3 Ill.Dec. 961, 359 N.E.2d 820 (1977) (in domestic relations cases, the attorney is permitted not to reveal the client's address to the court when the client legitimately feared physical reprisal from his or her spouse).
We note, however, the scope of the attorney-client privilege is "`to be strictly limited to the purposes for which it exists.'" In re Richardson, 31 N.J. 391, 397, 157 A.2d 695 (1960). In considering whether a client's address fell within the privilege, our Supreme Court evaluated the question on "the basis of the purposes for which the privilege exists and the reasons for its assertion in the context of the particular case." Fellerman v. Bradley, 99 N.J. 493, 502, 493 A.2d 1239 (1985). In Fellerman, the attorney refused to disclose the client's address, and as a result, the attorney effectively prevented the *331 court from enforcing a provision of the final judgment. The Court held that the information is not protected under the attorney-client privilege because such nondisclosure to the court fell within the fraud exception under N.J.S.A. 2A:84A-20(2)(a); Evid.R. 26(2)(a). Id. at 506-07, 493 A.2d 1239. The Court further observed that a "failure to disclose the information would frustrate enforcement of the judgment of the court." Id. at 505, 493 A.2d 1239. The Court said:
Like all evidentiary privileges, the attorney-client privilege, though serving a significant public policy, if invoked in the context of litigation, can conflict with other important policies of our judicial system. One such policy consideration is that which encourages the fullest disclosure of facts as the most efficacious approach "to the truth and ultimately to the triumph of justice."
Id. at 502, 493 A.2d 1239 (citation omitted).
Unlike Fellerman, here we do not believe that the conduct in this case comes within the expanded definition of fraud. Nevertheless, we are convinced that the same principles apply. That is, it is necessary to balance the various interests involved to determine if the attorney-client privilege should apply. See In re Richardson, supra, 31 N.J. at 401, 157 A.2d 695.
Applying these principles to the present case at hand is not without difficulty. Engle urges that the attorney-client privilege should be enforced here even if it may frustrate competing values. He notes that his client desired his identity remain confidential because he feared retaliation from plaintiff. On the other hand, plaintiffs argue that the identity of the author of the anonymous letter is necessary to prove their claim. The name of the person sending the alleged defamatory letter is the one fact needed to obtain effective relief.
We are satisfied that in the context of the employee's action, the withholding of the identity of the client's name would not advance the purpose of the privilege, which is the free and full disclosure of information from the client to the attorney. 8 Wigmore on Evidence, § 2291 at 545 (McNaughton rev. 1961). The client here went beyond seeking legal advice from his or her attorney. After Engle wrote to plaintiffs informing them *332 of his client's concern of possible illegal activities by plaintiffs, the client subsequently wrote the alleged defamatory letters. Even after the attorney-client relationship was terminated, the client continued to write to plaintiffs. In the context of this case, we are convinced that the need to disclose the identity of the client outweighs any countervailing concerns. We discern no useful purpose to apply the attorney-client privilege here and refuse to do so.
We reverse and remand to the trial court to enter an order requiring Engle to disclose the name of his client.
NOTES
[1] Dry Branch Kaolin Company's corporate stock holder is Georgia Kaolin Company. Georgia Kaolin Company's parent company is Asea Brown Boveri. For the purpose of this opinion, "Dry Branch" is used in reference to all of the three companies.
[2] The appendix does not contain Brett's letter of June 28, 1991 although it is referred to in Engle's letter of July 1, 1991 which is part of the appendix.