UNITED STATES of America and Carl E. Reichelt, Special Agent of Internal Revenue Service, Petitioners-Appellees,

v.

FIRST NATIONAL STATE BANK OF NEW JERSEY, Respondent,

Herbert M. Gannet, Intervenor-Appellant.

No. 76–1261.

United States Court of Appeals, Third Circuit.

Argued March 25, 1976.

Decided July 28, 1976.

Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Robert E. Lindsay, Daniel F. Ross, Attys., Tax Div., Dept. of Justice, Washington, D.C., for petitioners-appellees; Jonathan L. Goldstein, U.S. Atty., George E. Mittelholzer, Asst. U.S. Atty., Newark, N.J., of counsel.

Herbert M. Gannet, Harvey R. Poe, Dino D. Bliablias, Newark, N.J., for intervenor-appellant.

Before SEITZ, Chief Judge, and ROSENN and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

This case presents us with the question of whether an intervening party in an administrative summons enforcement proceeding may be held in civil contempt for refusing to answer questions which range beyond the scope of the proceeding. We hold that the Internal Revenue Service (IRS), the administrative agency involved, lacked the statutory power to require answers to questions which were unrelated to the enforcement of the summons and that therefore the district court erred in imposing a civil contempt sanction.

### I.

In November, 1974 the Internal Revenue Service Center in Holtsville, New York received a cashier's check issued by the National Newark & Essex Bank from Herbert L. Zuckerman, an attorney. As the accompanying letter explained, Zuckerman forwarded this check in the amount of $142,-497.81 to the Internal Revenue Service on behalf of a taxpayer whose name was unknown to him but who owed taxes and interest for prior years. Zuckerman wrote that the taxpayer was paying these moneys on the recommendation of counsel.

Upon receipt of this check and letter the IRS commenced an investigation to determine the identity of the unnamed taxpayer. *See United States v. Bisceglia,* 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975). The first stage of the inquiry resulted in information that the source of the funds for the cashier's check was a check drawn on the Herbert M. Gannet Trust Account at First National State Bank of N.J. (Bank) payable to Zuckerman in the amount of $142,497.81. Thereafter, on October 3, 1975, pursuant to 26 U.S.C. § 7602,[1] the IRS served a sum-

---

1. 26 U.S.C. § 7602 provides:

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any

mons on the Bank seeking information concerning the Herbert M. Gannet Trust Account. This summons sought all negotiable instruments and deposit slips relating to the source of funds used for the issuance of the $142,497.81 check as well as monthly bank statements for this trust account.

Apparently, appellant Gannet, an attorney, had been consulted by the unnamed taxpayer about a potential tax liability for past years. Legal advice had evidently been imparted to the taxpayer-client, and based upon that advice, a decision was made to pay the tax deficiencies plus interest in a manner which was designed to protect the taxpayer's identity. We can further assume that Zuckerman, who wrote to IRS and forwarded the cashier's check, was engaged to assist in this endeavor of shielding the taxpayer's identity from disclosure.

In response to the summons the Bank furnished the IRS with two cashier's checks that had been deposited in the Gannet Trust Account. These checks had been purchased at the Bank's Port Newark branch office on October 31, 1974 in the amounts of $65,182.66 and $77,315.15 (totalling $142,-497.81).

The Bank then informed Gannet that it had furnished the above information to the IRS in compliance with the summons. Gannet served written notice on the Bank di-

recting it not to provide any further information concerning his Trust Account.

As the IRS investigation continued a second IRS summons was served on the Bank on November 19, 1975. This summons required the Bank to:

Furnish information as set forth below which pertains to the purchase of cashier's checks numbered 39649 and 39651 in the respective amounts of $65,182.66 and $77,315.15 dated October 31, 1974 which were purchased at the Port Newark Office:

1. Name, address and social security number of the purchaser of the above-described cashier's checks.

2. All documentation relative to the source of funds used to purchase the above-described checks.

After the Bank notified Gannet of this second attempt to obtain information, Gannet commenced Civil Action No. 75–2028 in which he sought to enjoin the Bank from complying with the November 19, 1975 summons. This application for injunctive relief was denied by the district court.[2]

The government then filed a complaint in the U.S. District Court for the District of New Jersey to enforce the summons which had issued on November 19, 1975. This latter complaint, based upon 26 U.S.C. §§ 7402(b),[3] 7604(a),[4] alleged that the IRS

---

such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

**2.** However, this Court, on Gannet's application, enjoined the Bank from complying with the November 19, 1975 summons pending appeal in Civil Action No. 75–2028 or government enforcement of the summons.

**3.** 26 U.S.C. § 7402(b) provides:

(b) To enforce summons.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.

**4.** 26 U.S.C. § 7604(a) provides:

(a) Jurisdiction of district court.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in

was engaged in an investigation to determine the federal tax liabilities of an unknown taxpayer and that the Bank "is in possession and control of papers and documents concerning the above-described investigation." The IRS asserted that the information sought in the summons was not within its possession and that

[i]t was and is now essential to the determination of the correct tax liability of John Doe, for the years 1968 through 1974, inclusive, that the defendant be required to appear and to produce the documents, records and other information sought in the summons and to give testimony regarding those documents and records.   .   .   .

On January 22, 1976 the district court ordered that the Bank show cause why it should not be compelled to obey the IRS summons. This order to show cause stated:

All motions and issues raised by the pleadings will be considered on the return date of this order. Only those issues raised in motion or brought into controversy by the responsive pleadings and supported by Affidavit(s) will be considered at the return of this order.   .   .

Thereafter Gannet moved to intervene in the enforcement proceeding as a defendant in order to oppose enforcement of the IRS summons against the Bank. His proposed Answer to the government's complaint alleged that "the documents, records and other information sought in the summons are protected from being produced by the attorney-client privilege."

On February 23, 1976, the parties appeared before the district court for the enforcement hearing. The district court first granted Gannet's motion for intervention and then ordered the enforcement proceeding consolidated with Gannet's earlier suit for injunctive relief (Civil Action No. 75–2028). Next the court had the parties address Gannet's claim of attorney-client privilege set forth in his Answer. Gannet ar-

gued that the records of his Trust Account at the Bank, the subject of the first IRS summons of October 3, 1975, were shielded from disclosure with respect to the unnamed taxpayer. He also contended that since the November 19, 1975 summons before the court was based upon privileged information that had been improperly taken from the records of his Trust Account, the district court should deny enforcement of this latter summons. In response, the government argued that the materials sought by the summons were bank records which were not privileged from disclosure.

Following the arguments of counsel the government called Gannet to testify at the enforcement hearing. Gannet was asked the following questions:

"Mr. Gannet, will you please tell the court whether or not—or if you purchased cashier's checks number 39649 and 39651 in the respective amounts of $65,-182.66 and $77,315.15 on October 31st, 1974 from the Port Newark Office of the First National State Bank."

"Mr. Gannet, what was used to purchase the two cashier's checks in question, and I may amplify my question—   .   .   . Currency, Treasury bills, Certificate of Deposit, whatever?"

"Mr. Gannet, can you tell whether you know what medium of exchange was used to purchase these checks?"

"Mr. Gannet, I must ask you, since you have intervened in this case you obviously did not intervene on your own behalf, but you intervened on behalf of some other party, and for that reason I ask you who you represent, who is the real party in interest on whose behalf you have intervened?"

Gannet objected to these questions on two grounds: (1) that the line of questioning was "entirely irrelevant to the proceedings on the summons now in question" and (2) that the questions sought to evoke answers protected by the attorney-client privilege. The district court overruled both ob-

---

which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or pro-

duction of books, papers, records, or other data.

jections and ordered Gannet to answer. Gannet refused.

Immediately thereafter, on February 23, 1976, the district court granted enforcement of the summons against the Bank. Gannet appealed from this order at No. 76–1234.

On February 27, 1976 the district court summarily ordered Gannet confined pursuant to 28 U.S.C. § 1826(a) [5] until such time as he answered the government's questions. This confinement order was stayed pending an application to this Court for a stay of the enforcement order of February 23, 1976. Gannet also filed a notice of appeal from the confinement order at No. 76–1261, which is the appeal with which we are here concerned.

On March 8, 1976 this Court denied Gannet's motion for a stay pending appeal of the district court's February 23, 1976 order which enforced compliance with the IRS summons. Subsequently, the Bank's records required by the summons were delivered to IRS.[6] On March 11, 1976, this Court granted Gannet's motion for a stay pending appeal of the confinement order of February 27, 1976. Thus Gannet has not yet commenced serving the civil contempt sentence which had been imposed on February 27, 1976. It is only the appeal from the order of confinement that is now before us.[7]

## II.

The parties initially joined issue on the question of whether Gannet, asserting an attorney-client privilege, properly refused to answer the four questions which the government asked during the enforcement proceeding. In its opinion the district court focused exclusively upon that issue.[8] However, Gannet had also objected to the questions asserting their irrelevancy to the proceedings then under way. In an addendum to his brief in this Court, Gannet argued that the questions posed were not relevant to the enforcement of the IRS summons. In reply the government urged that a witness has no right to object to questions on the ground of relevancy, but that in any case the particular questions here were relevant to the enforcement proceeding.[9]

Gannet's objection to relevancy brought into issue the power and authority of the IRS in this enforcement proceeding to ques-

---

**5.** 28 U.S.C. § 1826(a) states:

(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—

(1) the court proceeding, or

(2) the term of the grand jury, including extensions, before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

**6.** The appeal from the district court's February 23, 1976 enforcement order is still pending before this Court at No. 76–1234 even though the Bank has furnished the materials sought.

**7.** As indicated, when the district court entered its order on February 27, 1976, it directed that Gannet be confined until such time as he re-sponded to the questions that had been asked of him. The implementation of that order was stayed pending an application by Gannet to this Court. We have serious doubts as to whether the district court could have imposed any effective civil contempt sanctions under 28 U.S.C. § 1826 as the order recites, or even under its inherent power, see Shillitani v. United States, 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966), after enforcement of the summons had been granted.

However, because of the nature of the particular proceeding, the continuing effect of the February 27th order and both the district court's and our stay of that order which fore-stalled any incarceration, we do not pursue this issue, noting that it has never been raised, briefed, nor presented to us by the parties.

**8.** 410 F.Supp. 585 (D.N.J.1976).

**9.** In making its argument the government relied upon Nelson v. United States, 201 U.S. 92, 26 S.Ct. 358, 50 L.Ed. 673 (1906); People's Bank v. Brown, 112 F. 652 (3d Cir. 1902); Marcus v. United States, 310 F.2d 143, 147 n.2 (3d Cir. 1962), cert. denied, 372 U.S. 944, 83 S.Ct. 933, 9 L.Ed.2d 969 (1963). We reject that argument for the reasons discussed in text, infra.

tion him on matters unrelated to the enforcement of the Bank summons. Since this objection raised a threshold question as to the power of the IRS, it must necessarily be resolved before we can reach any subordinate issue including that of an asserted attorney-client privilege. We therefore turn to a consideration of the authority under which the IRS can compel discovery and whether that authority was exceeded in this case.

## III.

Congress has provided the Internal Revenue Service with elaborate investigative powers to determine the tax liability of any taxpayer. Under § 7602 of the Internal Revenue Code of 1954, 26 U.S.C. § 7602, the IRS is authorized

> [f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . [t]o summon . . . any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate . . . to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry.

Where there has been noncompliance with a summons seeking testimony or the production of evidence, the IRS may seek judicial enforcement. The Internal Revenue Code provides that a federal district court "shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data." *See* notes 3, 4, *supra*.

■ The judicial proceeding provided for the enforcement of an IRS summons is no mere rubber stamp approval. *See In re Grand Jury Proceedings,* 486 F.2d 85, 90 (3d Cir. 1973) (*Schofield I*). An enforcement action is "an adversary proceeding affording a judicial determination of the challenges to the summons and giving complete

protection to the witness." *Reisman v. Caplin,* 375 U.S. 440, 446, 84 S.Ct. 508, 512, 11 L.Ed.2d 459 (1964); *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). At such a judicial hearing, *United States v. McCarthy,* 514 F.2d 368, 372 (3d Cir. 1975) requires that the IRS must be prepared to make a preliminary showing in support of its summons—

> (1) That the investigation has a legitimate purpose and that the inquiry may be relevant to that purpose, (2) that the information sought is not already within the government's possession and (3) that the steps required by the Internal Revenue Code have been followed . . . . .

The burden then shifts to the party named in the summons to establish any defenses or to prove that enforcement would constitute "an abuse of the court's process." [10] *United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). Thus the entire enforcement proceeding from its inception through hearing is strictly limited to the narrow issue of whether the summons is to be enforced.

■ Here the IRS summons to the Bank sought information concerning the cashier's checks purchased at its Port Newark branch office. In support of the summons enforcement complaint, which was directed only against the Bank and not Gannet, Special Agent Reichelt submitted an affidavit which satisfied the *McCarthy* requirements (*see* p. 624, *supra*), averring among other facts that the contents of the Bank records in question were not in the possession of IRS and that they were "essential to the investigation." Thus, IRS carried its initial burden with respect to enforcement of the summons against the Bank. *United States v. McCarthy, supra.*

■ In response the Bank and Gannet asserted various defenses, all of which opposed judicial enforcement of the IRS summons to the Bank. Thus the only issue before the district court was whether or not

---

**10.** Enforcement will be denied, for example, where it is established that the material is sought for use in a criminal prosecution or

where the information is held to be protected by the attorney-client privilege. *Reisman v. Caplin,* 375 U.S. at 449, 84 S.Ct. 508.

the November 19, 1975 Bank summons seeking certain Bank records was to be enforced.

However, during the enforcement hearing the government called Gannet as a witness and commenced a line of questioning that neither supported enforcement of the summons nor rebutted any defenses raised against enforcement. While these questions were undoubtedly relevant to the overall IRS investigation of the unknown taxpayer, they were completely irrelevant to the single issue before the court—whether the November 19, 1975 summons to the Bank should be judicially enforced. In effect, the government, by this means, sought to convert a narrow and limited enforcement proceeding into a general investigative proceeding. We know of no authority which grants the IRS an unlimited commission to interrogate witnesses under oath on matters unrelated to enforcement of the summons then before the court.

As previously discussed, Congress has empowered IRS to carry on its investigative functions through the issuance of administrative summonses. Judicial involvement only arises where there has been noncompliance with a summons. The judicial enforcement proceeding that follows is strictly limited to granting or denying enforcement of the terms of the specific summons. To permit inquiry into areas unrelated to the enforcement of the summons, as was the situation with respect to the questions asked of Gannet here, violates this Congressionally mandated procedure.

As we have observed, no summons has ever been issued to Gannet. Consequently, Gannet has not had the opportunity to comply with or to contest a summons seeking information of his own knowledge and of his own actions. Furthermore, the government has not been obliged to satisfy the *McCarthy* requirements in a summons enforcement proceeding as they may relate to information sought to be elicited from Gannet. Finally, and most importantly here, only after a summons had issued to Gannet and had been judicially enforced against him would Gannet's refusal to comply or testify subject him to the possibility of civil contempt. In our view, the government exceeded its statutory powers under §§ 7602, 7402(b), and 7604(a) by utilizing the summons enforcement proceeding with respect to the Bank as an investigative tool to pry information from Gannet.

IV.

Having concluded that the government was without statutory authority in the Bank summons enforcement proceeding to ask Gannet the four questions at issue here (*see* p. 622, *supra*), we must reverse the district court's order which adjudged Gannet in contempt for refusing to answer these questions. In disposing of this appeal on the threshold issue of statutory power, we do not reach and hence express no opinion concerning Gannet's claim of attorney-client privilege.

We will reverse and remand to the district court with the direction that the contempt and confinement order of February 27, 1976 be vacated, at which time our stay pending appeal will terminate.

SEITZ, Chief Judge (dissenting).

It is important to keep in mind that the confinement order presently before us arose during statutory proceedings initiated by the I.R.S. to secure judicial enforcement of a summons directed solely to the Bank. At the court hearing, the intervenor-appellant, as a witness, refused to answer certain questions and his refusal resulted in a contempt order which finally eventuated in the confinement order now on appeal.

Given the setting in which they were asked, I must presume that the questions posed to the intervenor-appellant sought to elicit evidence which would aid the court in determining whether to enforce the summons against the Bank. However, despite the intervenor-appellant's refusal to answer, the court proceeded to enter a final order directing the Bank to comply with the summons. Since the relief sought against the Bank, i. e., enforcement of the summons, has been obtained, the underlying

contempt order is, in my view, no longer viable.

The purpose of civil contempt is wholly remedial. It is designed to coerce compliance with the lawful orders of the court, rather than vindicate the court's authority. *Universal Athletic Sales Co. v. Salkeld,* 511 F.2d 904 (3d Cir. 1975), *cert. denied,* 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975). However, once enforcement of the summons had been obtained, the testimony of the intervenor-appellant became unnecessary. Consequently, the contempt order and its implementing confinement order can now serve no proper remedial purpose. I would therefore dismiss this appeal as moot.