UNITED STATES of America and Glenn Miyamoto, Revenue Agent, Petitioners,

v.

The BANK OF CALIFORNIA, National Association, Respondent.

No. C–76–689 WHO.

United States District Court, N. D. California.

Sept. 14, 1976.

James L. Browning, Jr., U.S. Atty., John Youngquist, Asst. U.S. Atty., San Francisco, Cal., for petitioners.

James J. Brosnahan, Morrison & Foerster, San Francisco, Cal., for respondent.

Edward M. Stadum, San Francisco, Cal., Applicant for intervention.

1. Section 7602 of the Internal Revenue Code of 1954 (26 U.S.C. § 7602) provides:

 "For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

 (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

 (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

 (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."

## OPINION IN ORDER

ORRICK, District Judge.

This is another in a series of recent cases challenging the government's right to obtain a bank's records of its customers' accounts. The case is before the Court on a verified petition for enforcement of Internal Revenue summons, filed by the United States and Agent Glenn Miyamoto of the Internal Revenue Service (Government) on April 7, 1976, and a motion to intervene as a respondent, filed by the taxpayer, Edward M. Stadum, an attorney (Applicant), on May 17, 1976. The summons was served on The Bank of California, National Association (Bank) on October 29, 1975, pursuant to Sections 7602 and 7603 of the Internal Revenue Code of 1954 (26 U.S.C. §§ 7602, 7603).[1] It required the Bank to produce certain of its records respecting Applicant's law office trust account.[2] This proceeding is brought and this Court has jurisdiction hereof under Sections 7402(b) and 7604(a) of the Internal Revenue Code of 1954 (26 U.S.C. §§ 7402(b) and 7604(a)).[3]

1. Section 7603 of the Internal Revenue Code of 1954 (26 U.S.C. § 7603) provides:

 "A summons issued under section 6420(e)(2), 6421(f)(2), 6424(d)(2), or 7602 shall be served by the Secretary or his delegate, by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode; and the certificate of service signed by the person serving the summons shall be evidence of the facts it states on the hearing of an application for the enforcement of the summons. When the summons requires the production of books, papers, records, or other data, it shall be sufficient if such books, papers, records, or other data are described with reasonable certainty."

2. All deposit slips made to the account, all checks drawn against the account, and all bank account information maintained by Applicant in the Bank.

3. Section 7402(b) of the Internal Revenue Code of 1954 (26 U.S.C. § 7402(b)) provides:

 "If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testi-

For the reasons hereinafter set forth, I find that Applicant has failed to establish a "significantly protectable interest" warranting his intervention in these proceedings, and that the summons is enforceable.

I

On November 12, 1973, the Government requested that Applicant provide complete records of all his personal and business banking transactions for 1972 in connection with a routine audit of the 1972 joint income tax return of Applicant and his then wife.[4] Applicant produced most of the requested materials, but he refused to produce the originals of his trust account records and unaltered copies of checks drawn on his law office trust account, claiming that they were privileged. He did provide copies of cancelled checks with his clients' names deleted.

In July of 1974, the Government caused a Section 7602 summons to be served on Applicant. Applicant again refused to fully comply, claiming that the production of the trust account records and his clients' identities would violate the attorney-client privilege and the Fourth and Fifth Amendments. He further asserted that his clients'

identities were irrelevant to his 1972 tax liability. As a result, in August and October of 1975, the Government caused two Section 7602 summonses to be served on the Bank requesting production of its records respecting the trust account. At Applicant's request, the Bank refused to comply with the summonses without a court proceeding.

Thereafter, the Government filed its petition to enforce the October 29 summons (Bank summons), and the Government caused a notice of deficiency in the amount of $28,795 to be sent to Applicant,[5] and Applicant filed his motion to intervene. The Bank is not opposing the petition, and will produce the requested records upon this Court's order to do so.

Applicant is contending that the Government has abused this Court's process by seeking allegedly irrelevant information and by attempting to circumvent the discovery rules and policies of the United States Tax Court where he intends to contest the deficiency assessment. He further alleges that enforcement of the summons will violate the Fourth and Fifth Amendments and his clients' attorney-client privileges.[6]

mony, or production of books, papers, or other data."

Section 7604(a) of the Internal Revenue Code of 1954 (26 U.S.C. § 7604(a)) provides:

"If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data."

4. At no time has a recommendation for civil or criminal prosecution been made with respect to Applicant, and both Applicant and the Government have represented to the Court that they are unaware of any investigation or prosecution pending against any of Applicant's clients.

5. The $28,795 represents all deposits made by Applicant into the account during 1972. The deficiency notice was sent on April 15, 1976, in order to toll the applicable statute of limitations (26 U.S.C. § 6501(a)), which Applicant would not agree to extend pursuant to 26 U.S.C. § 6501(c)(4).

6. By his proposed answer to the petition, Applicant also alleges that the summons is unenforceable for mootness since a notice of deficiency has been issued and that his substantial compliance with the predecessor summons should preclude enforcement of the Bank summons. These contentions are without merit. The summons is not unenforceable for mootness, for "[t]he validity of a § 7602 summons is tested as of the date of issuance" (*United States v. Cromer,* 483 F.2d 99, 101 (9th Cir. 1973))—here October 29, 1975. It is enforceable after the mailing of a deficiency notice (*National Plate & Window Glass Co. v. United States,* 254 F.2d 92, 93 (2d Cir. 1958), *cert. denied,* 358 U.S. 822, 79 S.Ct. 35, 3 L.Ed.2d 63 (1958)), and even after the government has secured an indictment against the taxpayer. *In re Magnus, Mabee & Reynard, Inc.,* 311 F.2d 12, 16 (2d Cir. 1962), *cert. denied,* 373 U.S. 902, 83 S.Ct. 1289, 10 L.Ed.2d 198 (1962). Further, there has been no compliance whatever with the Bank summons which seeks additional information to that previously supplied by Applicant.

The Government resists Applicant's intervention in this proceeding, claiming that he has failed to demonstrate a "significantly protectable interest" warranting his intervention under the standards established by the Supreme Court in *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). Moreover, the Government contends that the materials sought are not privileged, and that neither the Fourth nor Fifth Amendments are implicated by a valid Section 7602 summons seeking a bank's records respecting a law office trust account. Finally, it seeks enforcement of the summons on the grounds that it was lawfully issued pursuant to a proper purpose.

## II

■ Taxpayer intervention in Section 7602 summons enforcement proceedings brought against third parties has been permitted under limited circumstances. *See, Donaldson v. United States, supra,* 400 U.S. at 530–531, 91 S.Ct. 534; *Garrett v. United States,* 511 F.2d 1037, 1038 (9th Cir. 1975); *United States v. Luther,* 481 F.2d 429, 433 (9th Cir. 1973). Such intervention is permissive, not mandatory, and is appropriate only where the taxpayer establishes that he has a "significantly protectable interest" in the proceeding, as where there has been an abuse of legal process or where some privilege will be violated by enforcement. *Donaldson v. United States, supra,* 400 U.S. at 531, 91 S.Ct. 534; *Garrett v. United States, supra,* 511 F.2d at 1038.

■ Abuse of process exists where the summons is issued in bad faith, "solely" for criminal investigatory purposes (*Donaldson v. United States, supra,* 400 U.S. at 533, 91 S.Ct. 534; *Wild v. United States,* 362 F.2d 206, 208–209 (9th Cir. 1966)), to harass the taxpayer (*United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); *United States v. Church of Scientology of California,* 520 F.2d 818, 822 (9th Cir. 1975)), or after a recommendation for criminal prosecution. *Reisman v. Caplin,* 375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964); *Boren v. Tucker,* 239 F.2d 767, 772 (9th Cir.

1956). Applicant does not assert any such abuse. Rather, he maintains, first, that the Bank's records sought are irrelevant to his 1972 tax liability. However, relevancy has "a broader connotation [under Section 7602] than in the context of trial". *United States v. Ruggeiro,* 425 F.2d 1069, 1071 (9th Cir. 1970), *cert. denied,* 401 U.S. 922, 91 S.Ct. 863, 27 L.Ed.2d 826 (1971). The test as to whether records sought are relevant to a tax inquiry within the meaning of Section 7602(2) is whether the inspection sought *might* throw light upon the correctness of Applicant's 1972 return. *United States v. Ryan,* 455 F.2d 728, 733 (9th Cir. 1972); *United States v. Shlom,* 420 F.2d 263, 265 (2d Cir. 1969), *cert. denied,* 397 U.S. 1074, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970). The records sought by the Bank summons clearly satisfy this test. Applicant admittedly derived income from and deposited funds into the trust account during 1972. By the uncontroverted affidavit of Agent Miyamoto, the Government has established that since Applicant will not produce his own trust account records, the only source of ascertaining the correctness of Applicant's 1972 return is the bank records, and the only means of identification and verification of nonincome and income items may be through the trust account clients themselves.

■ Applicant next maintains that enforcement of the summons at this point in time (after the notice of deficiency and his statement of intention to challenge the deficiency assessment in the United States Tax Court) is analogous to using a Section 7602 summons to obtain information for use in a criminal proceeding, and thus should be condemned under *Donaldson v. United States, supra.* He argues that Tax Court discovery rules and policy might prevent the discovery and use of the information sought here. The argument lacks merit. It is established federal law that the mailing of a deficiency notice, and even a subsequent petition by the taxpayer to the Tax Court for review of the tax deficiency determination, does not cut off the Government's rights to have produced and to examine records bearing on the determina-

tion, where the summons was issued during the course of an audit and before the mailing of the notice. *National Plate & Window Glass Co. v. United States, supra,* 254 F.2d at 93. Accordingly, I find that this Court's process has not been abused.

## III

 The heart of Applicant's claimed right to intervene is his contention that production of the Bank's copies of the checks revealing the clients' names will violate the attorney-client privilege.[7] Applicant argues that the privilege is implicated because as an attorney he is required under Rule 9 of the California Rules of Professional Conduct[8] to maintain all funds received or held for the benefit of clients in a separate client fund or trust account. He suggests that the disclosure of unaltered checks deposited in or drawn upon this account will necessarily disclose the nature of the legal services he performed for his clients in violation of the state law which requires an attorney to preserve the confidences of his clients.[9] However, it is the law of this Circuit and elsewhere that checks deposited in or drawn upon a law office trust account are not privileged communications and that, therefore, no attorney-client privilege exists with respect to them or to copies of them in the hands of a third-party bank. *Harris v. United States,* 413 F.2d 316 (9th Cir. 1969); *O'Donnell v. Sullivan,* 364 F.2d 43, 44 (1st Cir. 1966), *cert. denied,* 385 U.S. 969, 87 S.Ct. 501, 17 L.Ed.2d 433 (1966).

 In *Harris,* a bank's records concerning a California attorney's trust account

---

7. The attorney-client privilege bestows upon a client a privilege to refuse to disclose and to prevent others from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client. *See,* McCormick, *Evidence* § 87 (2d ed. 1972); 8 Wigmore, *Evidence* § 2292 (McNaughton rev. 1961). The basic elements which are necessary in order to establish a claim of the attorney-client privilege were delineated by Judge Wyzanski in *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–359 (D.Mass.1950), as follows:

"* * * (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

The purpose of the privilege is to encourage the complete disclosure of information between an attorney and his client. *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); 8 Wigmore, *Evidence* § 2291, *supra;* McCormick, *Evidence* § 87, *supra.* While the holder of the privilege is the client, the attorney may assert it on behalf of his client. McCormick, *Evidence* § 92, *supra.*

8. Rule 9 of the California Rules of Professional Conduct has subsequently been superseded by Rule 8–101, but the underlying requirement is the same. The new rule provides in pertinent part:

"(A) All funds received or held for the benefit of clients by a member of the State Bar or firm of which he is a member, including advances for costs and expenses, shall be deposited in one or more identifiable bank accounts labelled 'Trust Account', 'Client's Funds Account' or words of similar import, * * * and no funds belonging to the member of the State Bar or firm of which he is a member shall be deposited therein or otherwise commingled therewith except as follows:

(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

(2) Funds belonging to a client and in part presently or potentially to the member of the State Bar or firm of which he is a member must be deposited therein and the portion belonging to the member of the State Bar or firm of which he is a member must be withdrawn at the earliest reasonable time after the member's interest in that portion becomes fixed. However, when the right of the member of the State Bar or firm of which he is a member to receive a portion of trust funds is disputed by the client, the disputed portion shall not be withdrawn until the dispute is finally resolved."

9. Section 6068(e) of the California Business & Professions Code provides that it is the duty of an attorney:

"To maintain inviolate the confidence, and at every peril to himself to preserve the secrets, of his client."

were subpoenaed by the grand jury.[10] In declining to find that such records, in particular copies of checks exchanged between the attorney and client, were protected by the privilege, the court said:

> " * * * the client, by writing the check which the attorney will later cash or deposit at the bank, has set the check afloat on a sea of strangers. The client knows when delivering the check, and the attorney knows when cashing or depositing it, that the check will be viewed by various employees at the bank where it is cashed or deposited, at the clearing house through which it must pass, and at his own bank to which it will eventually return. Thus, the check is not a confidential communication, as is the consultation between attorney and client." *Harris v. United States, supra,* 413 F.2d at 319–320.

I find *Harris* dispositive of this issue. *Baird v. Koerner,* 279 F.2d 623 (9th Cir. 1960), relied upon by Applicant in oral argument, is inapposite. *Baird* held that an attorney cannot be compelled to divulge the name of a client who employs him to mail a cashier's check to the Internal Revenue Service in voluntary payment of deficiencies owed from prior tax years. In *Baird* it was clear that the substance of the confidential communications between the attorney and his client would be revealed and that the client's potential liability for underpayment of taxes would be established if the client's name were disclosed. Quoting *Ex parte McDonough,* 170 Cal. 230, 236–237, 149 P. 566 (1915), the court noted that while the identities of clients are not normally within the privilege, an exception exists where:

> " * * * the name of the client * * is material only for the purpose of show-

ing an acknowledgment of guilt on the part of the client of the very offenses on account of which the attorney [was] employed." *Baird v. Koerner, supra,* 279 F.2d at 633.

Here, both Applicant and the Government have represented to the Court that none of the clients whose identities Applicant seeks to protect are known to be under investigation by the Internal Revenue Service or anyone else. More importantly, Applicant is not called upon to reveal his clients' identities. The clients' names appear on copies of checks which are in the hands of a third-party bank and, as noted, the summons is directed at the Bank. This Circuit has held that no confidential relationship exists between a bank and an attorney-depositor, and that the checks themselves are not privileged communications between an attorney and a client. *Harris v. United States, supra,* 413 F.2d at 319. A similar conclusion was very recently reached in *Gannet v. First National State Bank,* 410 F.Supp. 585 (D.N.J.1976). *Gannet,* like *Baird,* involved a situation in which an attorney sent the Internal Revenue Service cashier's checks on behalf of an unidentified client to satisfy an unpaid tax obligation. The Internal Revenue Service summoned the bank's records concerning the purchase of the cashier's checks and the source of funds used in order to ascertain the taxpayer's identity. The court held, *inter alia,* that no attorney-client privilege existed with respect to the records sought by the bank summons, since "[t]hese are obviously third-party disclosures which are not part of a confidential communication between attorney and client." *Gannet v. First National State Bank, supra,* 410 F.Supp. at 589.[11]

---

10. In essential respects, grand jury subpoenae and Section 7602 summonses receive like treatment in judicial proceedings. *See, United States v. Ryan,* 455 F.2d 728, 733 (9th Cir. 1972). The power of the Commissioner of Internal Revenue to investigate the records of a taxpayer is "analogous to that of the grand jury". *United States v. McKay,* 372 F.2d 174, 176 (5th Cir. 1967).

11. Even assuming that the attorney-client privilege may protect a client's identity contained in the records of a third-party bank, Applicant has not met his burden of proof with respect to the existence of the privilege. In some two-and-a-half years, he has failed to articulate a single fact tending to implicate the privilege. Rather, he alleges that the possibility of violating the privilege is sufficient for purposes of his intervention. Such an unsupported allegation is insufficient under *Donaldson v. United*

■ Accordingly, I find that the attorney-client privilege is not implicated by the records, in particular the copies of unaltered checks, sought by the Bank summons.

## IV

■ Applicant's Fourth and Fifth Amendment claims must fall with the attorney-client privilege.[12] Neither Applicant nor his clients have a protectable interest in the Bank records because they have no legitimate expectation of privacy in them. *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). *Kelley v. United States,* 536 F.2d 897 (9th Cir. 1976); *Garrett v. United States, supra.*

In *Miller,* the Supreme Court held that a bank customer has no Fourth Amendment interest in bank records of his transactions. During the course of a criminal investigation of defendant Miller's illicit liquor dealings, the government subpoenaed records of his accounts at two banks. The banks complied by furnishing records maintained in conformance with the Bank Secrecy Act of 1970 (12 U.S.C. § 1829b(d)), including copies of the defendant's deposit slips and checks. Evidence so obtained was introduced at Miller's trial after the trial court had denied his motion to suppress.

The Supreme Court ruled that the motion to suppress was properly denied since the defendant had no legitimate expectation of privacy in regard to the contents of the bank records and that, therefore, no Fourth Amendment rights were implicated by their production and use at trial. The Court rejected the argument that the defendant had a Fourth Amendment interest in the bank records because they were merely copies of his personal accounts which the bank was compelled to maintain by the Bank Secrecy Act. The Court reaffirmed the ruling of *California Bankers Association v. Shultz,* 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974), that the maintenance of such records by the bank invades no Fourth Amendment rights of any depositor. It further held that the bank records did not fall within a protected zone of privacy shielded by the Fourth Amendment from unwarranted governmental intrusion. Discussing the nature of the records produced, the Court stated:

"Even if we direct our attention to the original checks and deposit slips, rather than to the microfilm copies actually viewed and obtained by means of the subpoena, we perceive no legitimate 'expectation of privacy' in their contents. The checks are not confidential communications but negotiable instruments to be used in commercial transactions. * * * The lack of any legitimate expectation of privacy concerning the information kept in bank records was assumed by Congress in enacting the Bank Secrecy Act, the expressed purpose of which is to require

---

*States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), to warrant intervention. *Garrett v. United States,* 511 F.2d 1037, 1038 (9th Cir. 1975). *And see, United States v. Tratner,* 511 F.2d 248, 252 (7th Cir. 1975), holding that escrow account records in the possession of an attorney-taxpayer are not *per se* privileged from a Section 7602 summons. The court stated that:

"The obligation is on the person claiming the privilege to present the underlying facts demonstrating the existence of the privilege. It is not enough for an attorney to testify to his conclusions."

Were the attorney to come forward with facts implicating the privilege or indicating that a routine audit of his trust account was being employed as a ruse to investigate the financial affairs of his clients, this would be another matter.

12. There is no merit to the Fifth Amendment claim. The records belong to the Bank and are in the Bank's possession. There is no compulsion under the summons requiring Applicant or his clients to give incriminating testimony or to produce documents which contain incriminating evidence. *Fisher v. United States,* 425 U.S. 391, 409, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976), states that "the privilege protects a person only against being incriminated by his own compelled testimonial communications". While it is true that Applicant is required under the California Code of Professional Conduct to maintain the trust account with a bank, such a requirement does not constitute compulsion in violation of the Fifth Amendment. *See, California v. Byers,* 402 U.S. 424, 427–428, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971); *In re Michaelson,* 511 F.2d 882 (9th Cir. 1975), *cert. denied,* 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975).

records to be maintained because they 'have a high degree of usefulness in criminal, tax, and regulatory investigations and proceedings.' " *United States v. Miller, supra,* 425 U.S. at 442, 96 S.Ct. at 1623.

Applicant's suggestion that this case is distinguishable from *Miller* in that he is an attorney compelled by the California Code of Professional Conduct to maintain a client trust account, whereas *Miller* noted that the bank records there sought contained only information "voluntarily" conveyed to the bank, is unconvincing. Both Applicant and his clients knew or reasonably should have known that the checks they signed and sent into commerce would be viewed by third parties, in particular by bank personnel, and that copies of the checks were required to be made and retained by the Bank under the Bank Secrecy Act. As the Court stressed in Miller:

> "The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the government. * * * This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed. * * *
>
> This analysis is not changed by the mandate of the Bank Secrecy Act that records of depositors' transactions be maintained by banks." [13] *United States v. Miller, supra,* 425 U.S. at 443, 96 S.Ct. at 1624.

Accordingly, I find that no Fourth Amendment rights are implicated by the Bank summons.

## V

The final question presented is whether the Bank summons is enforceable. I find that it is.

In order to obtain enforcement of a Section 7602 summons, the Government must establish that the investigation will be conducted pursuant to a legitimate purpose; that the inquiry may be relevant to that purpose; that the information sought is not already within the Internal Revenue Service's possession; and that the administrative steps required by the Internal Revenue Code have been followed. *United States v. Church of Scientology of California, supra,* 520 F.2d at 821. On the basis of the record and oral argument had herein,[14] the Government has satisfied each of these requirements. The summons was issued in good faith for the proper purpose of conducting a routine tax audit of Applicant; the records sought bear directly on Applicant's 1972 tax liability and, because of Applicant's refusal to produce his trust account records, are the only means through which the Internal Revenue Service can ascertain the correctness of Applicant's 1972 tax return; the Internal Revenue Service does not presently have the information sought; and the entire investigation has been properly conducted according to applicable provisions of the Internal Revenue Code.

IT IS HEREBY ORDERED that Applicant's motion for intervention is DENIED and petitioner's application for enforcement of the summons is GRANTED.

---

13. Applicant does not claim that any of the requested records are not covered by the Bank Secrecy Act.

14. Ordinarily, an evidentiary hearing will be held where enforcement of a Section 7602 summons is contested. *United States v. Church of Scientology of California,* 520 F.2d 818 (9th Cir. 1975). However, such a hearing is discretionary with the court, and may be limited to the extent that the rights of the party summoned are not abridged. *Id.* at 821. Here, the summonee Bank is not contesting enforcement of the summons. Moreover, all concerned parties, including Applicant, have had ample opportunity to be heard and have generated a thorough record on the enforcement issue. I, therefore, find that further hearing on the enforcement of the summons is not required.